# IN THE COURT OF APPEALS OF IOWA

No. 13-0712
Filed October 1, 2014

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**JOHN ARTHUR WILSON,**
      Defendant-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.

John Wilson appeals his convictions of falsifying a public document and forgery. **AFFIRMED.**

Nicholas Dial of Benzoni Law Office, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, John P. Sarcone, County Attorney, and Justin Allen, Assistant County Attorney, for appellee.

Considered by Potterfield, P.J., and Tabor and Mullins, JJ.

**POTTERFIELD, P.J.**

John Wilson appeals his convictions of falsifying a public document, in violation of section 718.5 (2011), and forgery, in violation of Iowa Code section 715A.2(1)(b). He contends the district court abused its discretion in admitting evidence of his flight from police and applied the wrong standard in ruling on his motion for new trial. He also asserts his trial counsel was constitutionally ineffective. Because we find no abuse of discretion in the trial court's evidentiary rulings, we affirm the convictions. We do not rule on the ineffectiveness claims, preserving them for possible postconviction proceedings.

**I. Background Facts and Proceedings.**

John Wilson appealed his 2010 convictions for second- and third-degree theft in which he was sentenced to a term of imprisonment not to exceed seven years. He posted an appeal bond and was not incarcerated pending the appeal. Wilson was represented in his appeal by court-appointed counsel, John Audlehelm.

On July 12, 2011, Wilson filed an ethics complaint against Audlehelm and then filed a pro se motion in the Iowa Supreme Court requesting new counsel. Wilson went to Audlehelm's residence at 10 p.m. that same date, accompanied by his mother who was carrying a video camera, and handed Audlehelm copies of the ethics complaint and the motion filed in the supreme court. Audlehelm was disturbed by the event because his address was not listed and he had not informed Wilson where he lived.

On July 13, Audlehelm filed a resistance to Wilson's pro se motion for new counsel. He also filed a motion for an extension of time to file the proof brief,

which was due that day. On July 18, Audlehelm mailed the proof brief and designation of parts of the appendix, which were filed on July 20.

On July 27, a document captioned "withdrawal of resistance to motion for new counsel and motion to void brief and to withdraw," purportedly signed and filed by Audlehelm, was filed in the supreme court. Though a certificate of service indicated it had been sent to the attorney general's office, that office did not receive a copy of this filing.

On August 4, the supreme court issued an order granting the motion to withdraw and voiding the proof brief filed by Audlehelm.

On August 5—with a proof of service dated August 2—Wilson filed a pro se motion requesting an extension of time to file a brief and a renewed motion for the appointment of counsel.

On August 8, Audlehelm received in the mail a copy of the supreme court order removing him from Wilson's appeal. He contacted the appellate clerk's office and then went to office to look at the filings. Upon personally reviewing the document, Audlehelm informed the supreme court he had not filed the "withdrawal of resistance" and that he had not signed the document. He then spoke with the county attorney and Des Moines law enforcement to report the fraudulent document. Audelhelm prepared a motion requesting review of the order for withdrawal, which was served by mail on Wilson and filed August 10.

On August 11, three law enforcement officers went in an unmarked vehicle to Wilson's residence to serve a search warrant. They saw Wilson (whom they recognized) sitting in a vehicle outside the residence. He was on his cell phone. The officers stopped their vehicle facing Wilson's vehicle. Officer

Denise Schafnitz got out of the vehicle and walked toward Wilson. Though not in uniform, her badge was on her belt and her firearm was exposed. Wilson put his truck into reverse and sped away. A marked police car joined the ensuing chase, but Wilson did not stop. Rather, the chase ended when Wilson collided with another vehicle and fled on foot. He was not apprehended at that time. Upon executing the search warrant, officers seized a computer, several memory devices, and two printers. Analysis found no indication of the withdrawal-of-resistance document on these devices.

On August 23, Wilson filed a resistance to Audlehelm's motion to review the order removing him as appellate counsel.

On September 20, law enforcement officers, including Officer Patrick Moody and his canine, went to Wilson's residence to execute a search warrant and an arrest warrant. They had been informed Wilson may be hiding in a fake wall in the home. When they entered the home, no one responded to their calls. Wilson was located by the police dog in a hole in the basement floor, covered by a plastic tub. Wilson's laptop computer was seized. No relevant evidence was found on the laptop when it was analyzed.

Wilson was charged with falsifying a public document and forgery. Wilson was appointed a public defender but he then retained private counsel, Robert Wright Jr., who entered his appearance on November 15, 2011. Trial was scheduled for December 14 but was rescheduled many times thereafter.

Attorney Wright filed a motion to withdraw on January 4, 2012. The motion was denied. Attorney Wright filed a second motion to withdraw on January 25, which was granted on February 14.

On July 25, 2012, Wilson filed a pro se "notice of intent to call expert witnesses and motion for compensation of witnesses," in which he asserted he "requires the services and expert witness in the area of forensic handwriting analysis" and "also requires the general services of a private investigator." He filed a pro se motion for appointment of counsel. On September 4, Wilson filed an "application for payment of court-appointed private investigator"—a document indicating he was assisted by Christine Branstad.

A hearing was held on September 6 addressing Wilson's motion for court-appointed counsel. On September 10, the district court approved Wilson's September 4 application for payment of court-appointed private investigator. Wilson asked that the court appoint Christine Branstad as his attorney, but the court noted it was required to go through proper procedures and could not appoint a particular private attorney. The district court appointed Wilson new counsel, Michael Said, and authorized a private investigator. Attorney Said was allowed to withdraw on September 17, and Christine Branstad was then appointed to represent Wilson.

On December 10, 2012, Wilson filed a motion in limine seeking to have any evidence of where he was located when arrested excluded as irrelevant and unfairly prejudicial. The State resisted, arguing that the defendant's flight was relevant to his consciousness of guilt and his motive and intent to remain free pending the appeal. The court ruled evidence of flight was admissible and denied the motion.

At the jury trial, Officers Schafnitz and Moody testified as to their involvement with apprehending Wilson. Wilson did not testify. The court did not

instruct the jury on the significance of Wilson's flight from the police or his hiding when he was eventually arrested. Wilson was convicted as charged.

Wilson filed motions for judgment of acquittal, new trial, and judgment notwithstanding the verdict. He argued the verdicts were contrary to the weight of the evidence, citing *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998). He also contended the court erred in denying his motion in limine. The State resisted, arguing evidence of the defendant's flight to avoid apprehension was properly admitted and not unduly prejudicial. It also asserted the verdicts were not contrary to the weight of the evidence, citing *Ellis* and reciting the proper standard the court is to consider ("A verdict is contrary to the weight of the evidence where 'a greater amount of credible evidence supports one side of an issue or cause than another.'"). The State concluded,

> The evidence presented at trial supports the jury's verdict. The State does not concede the Defendant's recitation of evidence in his Motions is entirely reflective of all the evidence presented at trial. The Court observed trial and is aware of the evidence and arguments presented. There are no grounds on which the court could determine the evidence presented is insufficient to support the jury verdict.

The court denied the posttrial motions "for the reasons as set forth by the State's resistance. There exist no factual or legal grounds to grant the Defendant's motions."

Wilson appeals, contending the district court abused its discretion in allowing evidence of his flight from police and applied the wrong standard in ruling on his motion for new trial. He also asserts his trial counsel was constitutionally ineffective.

**II. Scope and Standards of Review.**

We review evidentiary rulings for an abuse of discretion. *State v. Putnam*, 848 N.W.2d 1, 8 (Iowa 2014). We will not find an abuse of discretion unless the trial court exercises its discretion "on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.* (internal quotation marks and citation omitted). "Even if a trial court has abused its discretion, prejudice must be shown before we will reverse." *Id.*

"The district court has broad discretion in ruling on a motion for new trial." *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003). "On a weight-of-the-evidence claim, appellate review is limited to a review of the exercise of discretion by the trial court, not of the underlying question of whether the verdict is against the weight of the evidence." *Id.* at 203.

Claims of ineffective assistance of counsel are grounded in the Sixth Amendment and, therefore, our review is de novo. *State v. Gines*, 844 N.W.2d 437, 440 (Iowa 2014).

**III. Discussion.**

*A. Evidence of flight.* Wilson contends the trial court abused its discretion in denying his motion in limine to exclude evidence concerning his flight from police. He asserts the testimony by Officers Schafnitz and Moody was irrelevant and constituted improper character evidence.

Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R. Evid. 5.401. Evidence of flight or concealment has long been held to be relevant and

probative of consciousness of guilt. *State v. Ash*, 244 N.W.2d 812, 816 (Iowa 1976) ("Evidence of flight may be considered in determining guilt or innocence."); *State v. Wimbush*, 150 N.W.2d 653, 656 (Iowa 1967) ("We have held many times that evidence of escape from custody and flight of an accused is admissible as a criminating circumstance."); *see also United States v. Thompson*, 690 F.3d 977, 991 (8th Cir. 2012) ("It is 'well established' that evidence of flight 'is admissible and has probative value as circumstantial evidence of consciousness of guilt. . . . '[I]t is today universally conceded that the fact of an accused's flight, *escape from custody*, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.'" (quoting *United States v. Hankins*, 931 F.2d 1256, 1261 (8th Cir. 1991))). Our supreme court has stated that a jury instruction concerning flight of a defendant is "rarely advisable." *State v. Bone*, 429 N.W.2d 123, 126 (Iowa 1988). Moreover, "[u]nless some evidence exists at the time of flight regarding an accusation of the specific crime charged, and the defendant's flight is shown to be prompted by an awareness of that accusation and an effort to avoid apprehension or prosecution, it will be error to give a flight instruction." *Id.* at 126-27. Nonetheless, the court has not retreated from the principle that evidence of flight is admissible. *See id.* at 127. ("Here, the concededly admissible evidence of flight and the inferences to be drawn therefrom were neither enhanced nor diminished by the court's improvident, but relatively balanced, comment upon it.")

Wilson argues, however, there is no connection between his alleged forgery and his flight from police on August 11 and his efforts to hide from police

on September 20. He claims there is no evidence showing he was aware of the accusations of forgery or falsifying public documents. However, we conclude the evidence was sufficient from which the district court could preliminarily determine Wilson knew when he fled from the officers on August 11 the fraudulent filing had resulted in the August 4 court order removing Audelheim, (and may have been aware Audlehelm had requested a review of the court's order, informing the court he had not filed the motion). *See id.* at 126 (noting "the trial court should assure itself that some evidence exists regarding an accusation of the specific crime charged before instructing the jury that flight may be considered in its determination of guilt"). Wilson filed a response to Audlehelm's motion to review on August 23. Wilson's hiding from police on September 20 was not so remote in time the district court was required to find that evidence was irrelevant. We find no abuse of discretion in the trial court's finding the evidence relevant.

Wilson maintains that even if relevant, the evidence was inadmissible as evidence of bad character under Iowa Rule of Evidence 5.404(b). He also argues the evidence was unfairly prejudicial under rule 5.403. We discussed in the preceding paragraphs the non-character purpose of showing Wilson's motive to delay the final ruling on his appeal. *See State v. Nelson*, 791 N.W.2d 414, 425 (Iowa 2010) (noting that under rule 5.404(b) "other crimes, wrongs, or acts evidence is admissible if it is probative of some fact or element in issue other than the defendant's general criminal disposition").

As noted recently by our supreme court, "The purpose of all evidence is to sway the fact finder." *State v. Huston*, 825 N.W.2d 531, 537 (Iowa 2013), (alterations and citation omitted). Yet, even relevant evidence is inadmissible "if

its probative value is substantially outweighed by the danger of unfair prejudice." Iowa R. Evid. 5.403. "Exclusion is required only when evidence is *unfairly* prejudicial in a way that substantially outweighs its probative value. Unfair prejudice is the undue tendency to suggest decisions on an improper basis, commonly though not necessarily, an emotional one." *Huston*, 825 N.W.2d at 537 (alterations and citation omitted).

Wilson argues the sensational facts of his flight from police and his subsequent discovery overwhelm the evidence of the crimes with which he is charged. However, the district court could have concluded the evidence was probative of the State's theory of the case, which was that Wilson was highly motivated to delay his appeal and prolong his freedom, and committed forgery to do so. The evidence of his flight supported that theory and weighed in favor of allowing the testimony concerning his flight. We note, too, that the officers' testimony did not sensationalize the defendant's conduct, but explained the chronology of the investigation. We find no abuse of discretion.

*B. New trial.* Wilson contends the trial court ruled on his motion for new trial on a sufficiency-of-the-evidence standard rather than on the weight-of-the-evidence standard he raised. He points to the district court's explanation that the ruling was "for the reasons as set forth by the State's resistance" and the State's inclusion in its resistance that "[t]here are no grounds on which the court could determine the evidence presented is *insufficient* to support the jury verdict." (Emphasis added.) But we conclude the motion and the resistance made clear that the ground on which a new trial was urged was the weight-of-the-evidence. Both cited *State v. Ellis*, where our supreme court held that "'contrary to . . . the

evidence' in [Iowa Rule of Criminal Procedure 2.24(2)(b)(6)] means 'contrary to the weight of the evidence.'" 578 N.W.2d 655, 659 (Iowa 1998). We find no reason to believe the district court considered an improper standard in ruling on the defendant's motion for new trial.

"Trial courts have wide discretion in deciding motions for new trial." *Id.* However, trial courts have been cautioned "to exercise this discretion carefully and sparingly when deciding motions for new trial based on the ground that the verdict of conviction is contrary to the weight of the evidence." *Id.*

> The standard we apply in determining whether the district court has abused its discretion in granting a new trial on a weight-of-the-evidence claim was aptly stated by one court in this passage:
>> The discretion of the trial court should be exercised in all cases in the interest of justice, and, where it appears to the judge that the verdict is against the weight of the evidence, it is his imperative duty to set it aside. "We do not mean . . . that he is to substitute his own judgment in all cases for the judgment of the jury, for it is their province to settle questions of fact; and, when the evidence is nearly balanced, or is such that different minds would naturally and fairly come to different conclusions thereon, he has no right to disturb the findings of the jury, although his own judgment might incline him the other way. In other words, the finding of the jury is to be upheld by him as against any mere doubts of its correctness. But when his judgment tells him that it is wrong, that, whether from mistake, or prejudice, or other cause, the jury . . . erred, and found against the fair preponderance of the evidence, then no duty is more imperative than that of setting aside the verdict, and remanding the question to another jury."

*State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003) (citations omitted). We find no abuse of discretion in the district court's denial of Wilson's motion for new trial.

*C. Ineffectiveness claim.* Wilson also contends his trial counsel offered constitutionally defective assistance in failing to object to the prosecutor's closing argument and in failing to request a ruling on his request for a handwriting expert.

Two elements must be established to show the ineffectiveness of defense counsel: (1) trial counsel failed to perform an essential duty; and (2) this omission resulted in prejudice. *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003). The inability to prove either element is fatal to the claim. *Id.* "The initial requirement for a due process claim based on prosecutorial misconduct is proof of misconduct." *Id.* "Trial counsel has no duty to raise an issue that lacks merit." *State v. Ross*, 845 N.W.2d 692, 698 (Iowa 2014).

*1. Closing argument.* Wilson argues trial counsel was ineffective in failing to object to the prosecutor's closing argument, complaining that the prosecutor's statement "provides a concrete opinion on the creation of the alleged forgery."

"Counsel is entitled to some latitude during closing argument in analyzing the evidence admitted in the trial." *Graves*, 668 N.W.2d at 874 (citation and internal quotation marks omitted). The State is permitted to draw conclusions and argue any permissible inferences reasonably flowing from the record, so long as the facts are not misstated. *State v. Williams*, 334 N.W.2d 742, 744 (Iowa 1983).

The jury was instructed, "Evidence respecting handwriting may be given by experts, by comparison, or by comparison by the jury, with writings of the same person which are proved to be genuine." The prosecutor's comments suggested the jury compare the signatures at issue:

When you get back to the jury room, you can look at these. The handwriting can be reviewed by you, the jury, and what do we notice about those two signatures? Well, the real one is a little thinner and lighter. It looks like it was written a little more smoothly. The forged one is thicker and almost looks shaky, as if someone took the real signature, put a piece of paper over the top of it and traced it, and had to do it slowly and couldn't do it smoothly like when you're really signing your name.

*2. No ruling on pro se request for handwriting expert.* Here, Wilson's contention is that had he been "given access to a handwriting expert he would have been able to present a more thorough defense." A defendant is not entitled to perfect representation, but rather only that which is within the range of normal competency. *State v. Artzer,* 609 N.W.2d 526, 531 (Iowa 2000).

We preserve both claims of ineffective assistance of counsel for possible postconviction relief proceedings. *See State v. Clay*, 824 N.W.2d 488, 501 (Iowa 2012) (setting out proper practice when dealing with multiple ineffective-assistance claims).

**AFFIRMED.**